1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10    THOMAS GOOLSBY,                        1:13-cv-00119-GSA-PC

11              Plaintiff,                   <u>SCREENING ORDER</u>
                                             (Resolves Doc. 32.)
12         vs.
                                             ORDER FOR PLAINTIFF TO EITHER:
13    MATTHEW CATE, et al.,
                                               (1)   FILE A SECOND AMENDED
14              Defendants.                           COMPLAINT, OR

15                                             (2)   NOTIFY THE COURT OF HIS
                                                     WILLINGNESS TO PROCEED ONLY
16                                                   ON THE CLAIMS FOUND
                                                     COGNIZABLE BY THE COURT
17
                                             THIRTY DAY DEADLINE TO FILE
18                                           SECOND AMENDED COMPLAINT OR
                                             NOTIFY COURT OF WILLINGNESS TO
19                                           PROCEED

20

21    **I.      BACKGROUND**

22         Thomas Goolsby ("Plaintiff") is a state prisoner proceeding pro se and in forma

23    pauperis with this civil rights action pursuant to 42 U.S.C. § 1983.  On February 11, 2013,

24    Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. §

25    636(c), and no other parties have made an appearance.  (Doc. 4.)  Therefore, pursuant to

26    Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall

27    conduct any and all proceedings in the case until such time as reassignment to a District Judge

28    is required.  Local Rule Appendix A(k)(3).

On January 25, 2013, Plaintiff and four co-plaintiffs filed the Complaint commencing this action. (Doc. 1.)   The court screened the Complaint pursuant to 28 U.S.C. § 1915A and issued an order on May 2, 2013, severing the plaintiffs' claims, directing the Clerk to open new cases for each of the four co-plaintiffs, and requiring each plaintiff to file an amended complaint in his own case. (Doc. 9.)  Thomas Goolsby is now the sole plaintiff in this case.

On September 25, 2013, Plaintiff filed the First Amended Complaint in this action, which is now before the court for screening. (Doc. 31.)

## II.      SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678.  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

III.     **SUMMARY OF FIRST AMENDED COMPLAINT**

Plaintiff is presently incarcerated at Pelican Bay State Prison (PBSP) in Crescent City, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR).  The events at issue in the First Amended Complaint allegedly occurred at California Correctional Institution (CCI) in Tehachapi, California, when Plaintiff was incarcerated there. Plaintiff names as defendants Matthew Cate (Director, CDCR), K. Holland (Warden, CCI), M. Stainer (former Warden, CCI), Captain J. Lundy, Plumlee (Head of Maintenance), Correctional Officer (C/O) Jordon, C/O Uribe, and Does 1-50.  All of the defendants were employed by the CDCR at the time of the events at issue.  Plaintiff's factual allegations follow.

### *Out of Cell Exercise*

Plaintiff was housed in CCI's Security Housing Unit (SHU) from February 11, 2011 through March 27, 2012.  During this thirteen-month period, Plaintiff claims that he was denied adequate out-of-cell exercise.  Plaintiff was only permitted one exercise period every thirteen days, lasting between two and two-and-one-half hours, which averages approximately twelve minutes of exercise per day.   There were no safety or security reasons for these limits. Defendants' own regulations, CCR Title 15 § 3343(h), mandate that Plaintiff must receive no fewer than five hours of out-of-cell exercise per week, and ten hours of out-of-cell exercise per week when the building has an attached yard, which Plaintiff's yard had.

Plaintiff was also denied an adequate area in which to exercise.  He was only allowed to exercise in a chain link "dog run" measuring 10x15-feet, with a concrete floor, expanded metal walls and a metal ceiling.   (Amd Cmpl at 5 ¶2.)   There is a stainless steel sink/toilet combination in one corner, leaving only about 145 square feet of the cage usable for exercise. The cage was only 25 square feet larger than Plaintiff's cell.   The cages are too small for inmates to run, jog, or walk laps.  The U.S. Government Animal Welfare Act, 7 U.S.C. § 2143, requires non-human primate cages to be 25 square feet for every 10 pounds the animal weighs. Thus, under animal rights, Plaintiff would be entitled to 500 square feet of area, since he weighs 200 pounds.  Plaintiff should be treated at least as well as a non-human primate.

///

1    Plaintiff put Defendants on notice of the deficient yard time and space, and the harm it
2  caused to Plaintiff, by filing three inmate appeals since 2008.  Defendants took no action.
3  Defendant Matthew Cate is responsible for making sure Wardens follow Title 15 concerning
4  yard time.  Defendants Holland and Stainer were both Wardens at CCI during Plaintiff's
5  confinement and are responsible for creating and implementing the yard policy at CCI,
6  ensuring that Plaintiff receives adequate out-of-cell exercise.  Captain Lundy is responsible for
7  the 4A-Yard program, and it is his job to run the yard and ensure that  Plaintiff receives
8  adequate out-of-cell exercise.  Defendants Holland, Stainer, and Lundy were placed on notice
9  many times when Plaintiff saw them at ICC Review.

10    As a result of the limited exercise time and space, Plaintiff suffered physical injuries
11 such as muscle atrophy, cardiovascular regression, tendon and ligament tightening, headaches,
12 asthma attacks, Vitamin D deficiency, eye pain, musco-skeletal pain, and joint pain.  Plaintiff
13 also suffered from depression, anxiety, insomnia, social withdrawal, emotional withdrawal, and
14 SHU syndrome.

15    Plaintiff is part of a class of CDCR inmates referred to as SHU inmates, who are
16 segregated from the general population and forced to live in SHU units at five prisons:  PBSP,
17 New Folsom, Corcoran, CCI, and CIW for women.  All of the SHU units must abide by the
18 same regulations, policies, and procedures.  Therefore, the SHU inmates are a distinctive class,
19 similarly situated.  SHU inmates at CCI are intentionally treated differently and deprived of
20 programs given to other SHU inmates.  CCI SHU inmates are not given at least 10 hours of
21 exercise, like other SHU inmates.  CCI inmates are only allowed to exercise in a 150-square-
22 foot "dog cage," whereas PBSP inmates have a 25x10-foot concrete yard.  (Amd Compl ¶18.)
23 There is no penological justification for this disparate treatment.  Defendant Matthew Cate is
24 responsible for making sure all SHU inmates are treated equally.  Defendants Holland and
25 Stainer are responsible for running the SHU at CCI in a manner consistent with SHU policies
26 and procedures followed throughout the state.

27 ///

28 ///

1

### *Unsanitary Conditions*

2        Plaintiff also claims that the plumbing system at CCI was defective.  According to

3    maintenance staff, the baffles on the plumbing sewage pipes have eroded away.  Without the

4    baffles, when one inmate flushes a toilet, his waste backs up into the neighboring cell's toilet.

5    This defective system created a severely unsanitary environment for Plaintiff.  The toilets are

6    limited to three flushes, exacerbating the issue.   Also, the toilets do not have seat covers, so

7    when you flush them, fecal and sewage material is sprayed into the cell.  Plaintiff was forced to

8    eat all his meals in his cell.  Plaintiff requested defendant Lundy to fix the plumbing or provide

9    Plaintiff with adequate cleaning supplies, but defendant Lundy denied the request, saying it was

10   too costly to fix the baffles, and refusing to provide adequate cleaning supplies.  Plaintiff then

11   requested defendant Plumlee to fix his toilet, but defendant Plumlee refused.  Plaintiff finally

12   sent his requests to Warden Holland, who also denied the requests.  As a result of the

13   unsanitary conditions, Plaintiff contracted a skin infection and a stomach illness, causing him

14   pain, itching, and suffering.

15       In November 2011, Plaintiff was sent to new cell.  Shortly after entering the cell,

16   Plaintiff noticed three silver-dollar-size white disks on the floor.  When he bent down to

17   examine them, a drop of water from the ceiling hit the back of his head.  Plaintiff saw mold all

18   along a 5-6 foot crack in the ceiling.  The white disks were calcium deposits from the long and

19   constant dripping of water.  Plaintiff washed the floor and put down a towel to catch the water.

20   The next morning, Plaintiff notified defendant C/O Uribe that his ceiling leaked, and C/O Uribe

21   replied, "This whole building leaks, welcome to 5-Block."  (Amd Compl ¶29.)   Looking out of

22   his cell window, Plaintiff saw more mold and water damage on the ceiling in front of his cell.

23   Later that day, Plaintiff began to cough and wheeze as his asthma flared up.  Plaintiff had to use

24   his inhaler, and he scrubbed the mold off the ceiling and covered his vents with paper to keep

25   the mold out of his cell.  Later that week, Plaintiff informed defendant C/O Jordon about the

26   mold and water, and Jordon said, "This whole place is falling down.  Deal with it.  Don't like it,

27   don't come to prison."  (Amd Compl ¶30.)  Plaintiff began a campaign of continually asking

28   defendants Uribe and Jordon and other C/Os to fix his cell and telling them the problems were

affecting his breathing.  Weeks later, C/O Garcia said she would put in a work order to have defendant Plumlee fix Plaintiff's cell.  No maintenance personnel ever showed up.

The section of the building containing Plaintiff's cell also flooded every time it rained.  One of the worst leaks was down the ventilation shaft in front of Plaintiff's cell.  On January 24, 2012, Plaintiff filed an inmate appeal about his water and mold problems.

On February 1, 2012, Plaintiff hurriedly got out of bed so he wouldn't miss breakfast, and he slipped on the water-soaked towel, wrenching his back and fell on the concrete floor.  Plaintiff felt intense pain in his back as he lay on the floor.  When the C/O came to bring breakfast, he saw Plaintiff on the floor and asked what happened, and Plaintiff told him.  When the nurse made her rounds, Plaintiff also informed her of his injury, and she gave Plaintiff a form to request medical services, which he filled out and turned in.

On February 22, 2012, Sergeant Eaton [not a defendant] inspected Plaintiff's cell.  The Maintenance Supervisor, Plumlee, never inspected or took any action to fix Plaintiff's cell, ignoring all work order requests and Plaintiff's appeal.  Plaintiff suffered serious prolonged pain in his back.  He was bedridden for a couple of days and could not sit for long periods of time.  Plaintiff's asthma worsened.

Plaintiff requests monetary damages and declaratory relief.

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . .  creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  Id. at 743-44.

### A.    Supervisory Liability

Plaintiff has named defendants Matthew Cate, Warden Holland, and Warden Stainer, who hold supervisory positions.  Plaintiff is advised that liability may not be imposed on supervisory personnel under section 1983 on the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 676; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009).  A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).  Therefore, to the extent that Plaintiff seeks to impose liability upon defendants in their supervisory capacity, Plaintiff fails to state a claim.

### B.    Adverse Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim,

and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted).  In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).   The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.  Id. at 731.

### *Toilets, Water Leaks, Mold, Flooding*

Unsanitary conditions including human waste spraying from the toilet and the growth of active mold in Plaintiff's prison cell may rise to the level of an Eighth Amendment violation.  However, Plaintiff fails to allege facts demonstrating that any of the Defendants personally acted against him, or failed to act, while knowing of and disregarding a substantial risk of serious harm to Plaintiff.  Therefore, Plaintiff fails to state an Eighth Amendment claim for the defective plumbing, dripping water, mold, and flooding in his cell.  Plaintiff shall be granted leave to amend this claim, if he so wishes.

### *Out-of Cell Exercise*

Inmates have a constitutional right to exercise, and the denial of out-of-cell exercise for an extended period of time is sufficiently serious to state a claim under the Eighth Amendment.  Thomas v. Ponder, 611 F.3d 1144, 1151–52 (9th Cir. 2010).  No bright line exists in terms of how many hours of out-of-cell exercise per week satisfy the Constitution.  Noble v. Adams, 646 F.3d 1138, 1139–41 (9th Cir. 2011) (no outdoor exercise or other privileges for approximately sixteen months); Hebbe v. Pliler, 627 F.3d 338, 343–44 (9th Cir. 2010) (inmate permitted out of his cell for only eight hours a week and impermissibly required to choose between exercise and law library access during those hours); Thomas, 611 F.3d at 1151–52 (no

out-of-cell exercise for thirteen months*);* <u>Pierce v. Cnty. of Orange</u>, 526 F.3d 1190, 1211–13 (9th Cir. 2008) (at least two days a week for at least two hours total per week sufficient exercise); <u>LeMaire v. Maas</u>*,* 12 F.3d 1444, 1457–58 (9th Cir. 1993) (no out-of-cell exercise for most of a five-year period); <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087 (9th Cir. 1994) (in-cell confinement for almost twenty-four hours a day and forty-five minutes of outside exercise per week for a six-week period*);* <u>Spain v. Procunier</u>, 600 F.2d 189, 199 (9th Cir. 1979) (fewer than five hours of exercise per week and no outdoor exercise for some inmates over a period of years).    Short-term, temporary deprivations of exercise without medical effects are not sufficiently serious to support an Eighth Amendment claim, <u>Thomas</u>, 611 F.3d at 1155; <u>Norwood v. Vance</u>, 591 F.3d 1062, 1070 (9th Cir. 2010*);* <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997); <u>Allen</u>, 48 F.3d at 1088, but the deprivation of exercise for a period of six weeks can support a claim, <u>Allen</u>, 48 F.3d at 1088.

Plaintiff alleges that during a thirteen-month period from February 11, 2011 through March 27, 2012, he was only allowed one outdoor exercise session every thirteen days, lasting two to two-and-one-half hours, and he was forced to exercise in a cage only 10x15-feet in size. Plaintiff alleges that he filed three inmate appeals concerning the denial of adequate exercise, and that he saw defendants Holland, Stainer, and Lundy at ICC Review and notified them of his inadequate access to exercise.  "[I]f an inmate presents evidence of very obvious and blatant circumstances indicating that the prison official knew [a substantial risk of serious harm] existed, then it is proper to infer that the official must have known of the risk."  <u>Thomas</u>, 611 F.3d at 1152 (quoting <u>Foster v. Runnels</u>, 554 F.3d 807, 814 (9th Cir. 2009).  Plaintiff claims that he suffered physical and emotional injuries as a result of lack of outdoor exercise.  Under these facts, Plaintiff states a cognizable claim under the Eighth Amendment for denial of adequate out-of-cell exercise against defendants Holland, Stainer, and Lundy.    However, Plaintiff fails to state a claim for being forced to exercise in a 10x15-foot area, because this condition does not rise to the level of an Eighth Amendment violation, which requires extreme deprivations denying the minimal civilized measure of life's necessities.

///

1

2   **C.      Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated

3   alike.  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249

4   (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may

5   be established by showing that Defendants intentionally discriminated against Plaintiff based

6   on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of

7   Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th

8   Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly

9   situated individuals were intentionally treated differently without a rational relationship to a

10  legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128

11  S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073

12  (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC

13  v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

14      Plaintiff, an inmate housed in the SHU at CCI, claims that his rights to equal protection

15  were violated because inmates in the SHU at other California prisons are treated differently

16  than he is.  Plaintiff alleges that CCI SHU inmates are not given at least 10 hours of exercise,

17  like other SHU inmates, and CCI SHU inmates are only allowed to exercise in a 150-square-

18  foot dog cage, whereas PBSP SHU inmates have a 25x10-foot concrete yard.  Plaintiff's

19  argument fails because SHU inmates are not a protected class, and Plaintiff does not allege

20  facts showing that he was intentionally treated differently than similarly situated SHU inmates

21  without a rational relationship to a legitimate state purpose.  Therefore, Plaintiff fails to state a

22  claim for relief for violation of his right to equal protection.

23      **D.      State Law Claims**

24      Plaintiff brings claims against Defendants for general negligence and premises liability.

25  Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the

26  CDCR, or other state law is not sufficient to state a claim for relief under § 1983.  To state a

27  claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.

28  See Paul v. Davis, 424 U.S. 693 (1976).  Although the court may exercise supplemental

jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.

### E.    Doe Defendants

Plaintiff names Doe defendants in this action.  Unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward.  "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.    For service to be successful, the Marshal must be able to identify and locate defendants.

## V.    CONCLUSION

The Court finds that Plaintiff's First Amended Complaint states cognizable claims against defendants Holland, Stainer, and Lundy, for denial of adequate outdoor exercise, in violation of the Eighth Amendment.  However, Plaintiff fails to state any other claims upon which relief can be granted under section 1983 against any of the Defendants.  Plaintiff shall be required to either file a Second Amended Complaint, or notify the Court of his willingness to proceed only on the denial of outdoor exercise claims against defendants Holland, Stainer, and Lundy.  Should Plaintiff choose to proceed only on the denial of outdoor exercise claims, the Court will begin the process to initiate service upon defendants Holland, Stainer, and Lundy by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'"  The Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above should he wish to do so.  Plaintiff is granted leave to file a Second Amended Complaint within thirty days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the Second Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at  678; Jones

v. Williams, 297 F.3d 930,  934 (9th Cir. 2002).  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 555).  As discussed above, there is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 677.  Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues.  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no"buckshot" complaints).  In addition, Plaintiff should take care to include only those claims that have been administratively exhausted.

If Plaintiff decides to file an amended complaint, he is reminded that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading.  Local Rule 220.  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

    (1)      File a Second Amended Complaint curing the deficiencies identified in this order, or

///

///

(2)     Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the denial of outdoor exercise claims against defendants Holland, Stainer, and Lundy;

3.     Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:13-cv-00119-GSA-PC; and

4.     If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **May 20, 2014**               **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE